**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **AUDREY RAGSDALE,** ) | |
| **Plaintiff,** ) | |
| ) | **Case No. _____** |
| **v.** ) | **JURY DEMANDED** |
| ) | |
| **METHODIST LE BONHEUR** ) | |
| **HEALTHCARE,** ) | |
| **Defendant.** ) | |

**COMPLAINT**

1.      Plaintiff, Audrey Ragsdale, is a resident of Shelby County, Tennessee.

2.      Defendant, Methodist Le Bonheur Healthcare ["Methodist"], is a healthcare company with locations in West Tennessee and Mississippi. Specifically, one of Methodist's facilities, Methodist North Hospital, is located in Memphis, Shelby County, Tennessee, at 3960 New Covington Pike, Memphis, Tennessee 38128. Methodist's registered agent for service of process is Monica N. Wharton, located at 1211 Union Avenue, Suite 700, Memphis, Tennessee 38104-6600.

3.      This action is filed for unlawful termination of employment pursuant to the Tennessee Human Rights Act ["THRA"], TENN. CODE ANN. § 4-21-101, *et seq.*; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. Each of the foregoing statutes provide in pertinent part that all employees should be protected from, *inter alia*, discrimination in employment and that all employees' interests in dignity and freedom from humiliation should be protected.

1

4.      This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Original Jurisdiction).

5.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) and (c).

6.      Defendant employs more than 500 employees.

7.      Methodist is an integrated, non-profit healthcare system based in Memphis, Tennessee.

8.      On or about February 25, 2014, Plaintiff was hired by Defendant as a Medical Technologist I at the Methodist North Hospital located at 3960 New Covington Pike, Memphis, Tennessee 38128. Plaintiff's job assignment as a generalist regularly required her to rotate within the lab to test patient specimens gathered by nurses and doctors within Methodist North Hospital. Plaintiff's role required her to stay in the lab; therefore, she was never interacting with patients. Plaintiff's interaction with other hospital employees, including, but not limited to, nurses, doctors, and administration, was very limited.

9.      In March 2020, the COVID-19 pandemic struck.

10.      Methodist initially implemented a policy requiring all employees to self-access their possible exposure to COVID-19 with daily health questions and temperature scans upon entry to the building.

11.      In April 2020, Methodist implemented a policy requiring all employees to wear a surgical mask. From April 2020 to June 2021, the only requirements for Plaintiff as a condition of her employment regarding COVID-19 was to wear a surgical mask while on site, health questions upon entry to site, and temperature scans upon entry to site.

12.      In June 2021, a new variant of COVID-19 emerged which caused the Center for Disease Control ["CDC"] to release updated guidelines.

13.     On or about July 27, 2021, CDC released its updated guidelines regarding COVID-19 vaccinations. Methodist decided to implement these new guidelines within its healthcare system.

14.     Methodist mandated that all employees were to be fully vaccinated by October 31, 2021. Attached as Exhibit A and incorporated by reference as though fully restated herein is Methodist's COVID-19 Vaccination for MLH Associates and Providers ["Vaccination Policy"].

15.     The Vaccination Policy did allow for two types of exemptions: (1) medical and (2) religious.

16.     On or about August 9, 2021, Plaintiff emailed Jane Nichols, Lab Director for North Hospital and Plaintiff's Direct Supervisor, regarding a religious exemption. Nichols forwarded said email to Mayzelle Moore, Human Resources Director for North Hospital. Moore emailed Plaintiff the Vaccine Exemption Form.

17.     On or about August 19, 2021, Plaintiff submitted the Vaccine Exemption Form. She also included a document titled "Statement of Declination for Offer of Vaccine Products" ["Statement"]. Attached as Exhibit B and incorporated by reference as though fully restated herein is the Vaccine Religious Exemption Form – COVID-19 Vaccine with Statement attached.

18.     Plaintiff's Statement outlines her sincerely held religious beliefs. Plaintiff "decline[d] all attempts to access, influence, and/or otherwise alter any and all of my God-given biological material and/or biological systems which are unique, flawless and original design and craftmanship of [her] Creator." *See* Exhibit B.

19.     Additionally, in Plaintiff's Statement, she outlined her requested religiously accepted accommodations of "one non-fitted surgical style mask and continue social distancing without being tested for Influenza or COVID." *See* Exhibit B.

20.     Because of Plaintiff's religious beliefs, she did not consent to the excessive COVID-19 nasal swab testing as an invasive medical procedure.

21.     On or about Friday, September 24, 2024, Plaintiff was notified her Religious Exemption request was approved. Attached as Exhibit C and incorporated by reference as though fully restated herein is Religious Exemption Approval Email dated September 24, 2021.

22.     In said Religious Exemption Approval Email, Plaintiff was required to do the following:

a.  Wear a designated respirator mask provided by [Methodist] at all times other than when actively eating or drinking;

b.  Be tested weekly for COVID-19; and

c.  Maintain social distancing including in breakrooms, and other measures as deemed necessary.

*See* Exhibit C.

23.     These accommodations were not the accommodations proposed by Plaintiff in her Statement. Therefore, none of Plaintiff's requested religiously accepted accommodations were approved. Based on the Religious Exemption Approval Email, there was no indication the requested accommodations were even considered. *See* Exhibit C.

24.     On or about October 18, 2021, Plaintiff inquired into this by emailing Ms. Moore. She notified Ms. Moore that although she had outlined requested religious exemption accommodations, she felt as if they had not been addressed appropriately. Ms. Moore provided no substantive response to Plaintiff's inquiry into the status of her requested religious accommodations. Ms. Moore simply provided Plaintiff with information regarding a respirator

fitting. Attached as Exhibit D and incorporated by reference as though fully restated herein is Re: ar137777a Religious Exemption dated October 18, 2021.

25.    In order to be fitted for her mask, Plaintiff had a choice between two days and had to drive to Methodist Germantown. This fitting was to take place during non-work hours, and there was to be no pay for the time or travel dedicated to the mask fitting. *See* Exhibit D.

26.    On or about October 21, 2021, Plaintiff had a phone call with Ms. Moore. It was Plaintiff's day off. Ms. Moore informed Plaintiff the COVID committee had met, and Plaintiff's approved religious exemption accommodations would not be granted. This was a final decision with no opportunity for further discussion or appeal. Moore stated she had to deal with 200 to 300 of "You people" which meant individuals who chose not to be vaccinated. Plaintiff asked if Moore could send an email detailing their conversation, but Ms. Moore refused. Ms. Moore stated she did not wish to be contacted by Plaintiff regarding this issue further.

27.    On or about October 22, 2021, Methodist sent an email outlining the COVID testing requirements for individuals who chose to not be vaccinated. Although the COVID tests would be at no cost to Plaintiff or any other Methodist employee, the tests were to be performed during non-work hours, the tests were to be taken at one location – Poplar Healthcare on Hacks Cross, and no more than 48 hours could lapse in between tests. There was to be no compensation for the time or travel involved in testing. Attached as Exhibit E and incorporated by reference as though fully restated herein is Heightened Safety Requirement – Testing email dated October 22, 2021.

28.    On or about October 26, 2021, Plaintiff was fitted for her respirator mask.

29.    Just three (3) days later, on or about October 29, 2021, Methodist amended its masking requirement from a 3M Elastomeric Respirator mask to a N95 mask.

30.     On or about November 5, 2021, Plaintiff informed Ms. Nichols she would not be complying with the testing requirements or wear an N95 mask because it violated her religious beliefs.

31.     On or about November 6, 2021, Ms. Nichols stated Plaintiff could either take a two week leave of absence to contemplate the required accommodations or be terminated. Plaintiff expressed she would not consent to any medical procedure against her religious beliefs. Ms. Nichols took Plaintiff's badge, clocked Plaintiff out of the system, and stated she would email Ms. Moore to contact Plaintiff via email. Plaintiff understood this to mean she had been terminated for failure to comply with the testing requirements.

32.     On or about November 8, 2021, Ms. Moore called Plaintiff on her personal cell phone. When Plaintiff did not pick up, Ms. Moore left a voicemail requesting a call back. Plaintiff did not call Ms. Moore back because Plaintiff had already indicated to Ms. Moore her requested mode of communication was to be email. Plaintiff's cell service was not working properly at the time. Plaintiff would get notifications that someone had called her phone hours after the individual had called without her phone ringing. Plaintiff was not attempting to be insubordinate, and she wanted to ensure all communication was clear.

33.     On or about November 9, 2021, Ms. Moore called Plaintiff's personal cell phone again requesting a call back regarding the two-week suspension. Plaintiff emailed Ms. Moore indicating Plaintiff would not be accepting calls at this time from Methodist because she was terminated on November 6, 2021, because her religious beliefs conflicted with COVID-19 testing.

34.     Ms. Moore responded to Plaintiff's email stating Plaintiff had not been fired. However, later in the email, Ms. Moore indicated that if Plaintiff did not call her back, she would be terminated for non-compliance.

35.    On December 1, 2021, Plaintiff was terminated from Methodist for "fail[ure] to comply with COVID exemption accommodation requirement."

36.    On or about January 17, 2024, the EEOC's right to sue letter was issued and received by Plaintiff.

37.    Plaintiff's termination was the result of religious discrimination against Plaintiff based on her religion.

38.    Since her unlawful termination, Plaintiff has experienced a decline in her overall mental health, including, but not limited to, increased stress, feelings of insignificance, and persistent sadness.

39.    Because of her unlawful termination, Plaintiff is now suffering an on-going loss of wages. Plaintiff had planned to work as long as she was able. She should be compensated for her wage losses and all other benefits she would have been entitled to had she remained employed.

40.    As a direct and proximate result of the discriminatory acts set forth above, Plaintiff has suffered the following injuries, including but not limited to:

   a.   embarrassment;

   b.   humiliation;

   c.   loss of self-esteem;

   d.   increased anxiety;

   e.   damage of reputation;

   f.   loss of concentration;

   g.   feelings she has lost control of her life and her career; and

   h.   sleeplessness.

41.    The foregoing injuries set forth have been suffered and will continue to be suffered into the foreseeable future.

42.    Plaintiff should be made whole for all injuries and losses suffered by Plaintiff as a proximate result of Defendants' unlawful acts.

43.    Defendants have intentionally, willfully, and/or recklessly violated Plaintiff's rights. An award of punitive damages is appropriate under the law.

## COUNT I

44.    The allegations contained in paragraphs 1 through 43 are incorporated by reference into this Count I.

45.    The THRA, TENN. CODE ANN. § 4-21-401, *et seq.*, states in pertinent part that all employees should be protected from, *inter alia*, discrimination and that all employees' interests in dignity and freedom from humiliation should be protected.

46.    Plaintiff's termination was based on her religious beliefs in violation of THRA.

47.    Accordingly, Plaintiff is entitled to a damages award against Defendants for all back pay, front pay, all benefits, prejudgment interest, tax gross-up, attorney's fees and expenses. In addition, Plaintiff is entitled to reinstatement to her former position if that is determined to be the proper remedy with all back pay and benefits.

## COUNT II

48.    The allegations contained in paragraphs 1 through 43 are incorporated by reference into this Count II.

49.    Plaintiff filed a Charge of Discrimination (No. 490-2022-00294) with the EEOC on August 17, 2022. The foregoing charge was filed within 300 days of Plaintiff's wrongful

termination. Attached as Exhibit F and incorporated by reference as though fully restated herein is Plaintiff's Charge of Discrimination.

50.    On January 17, 2024, the EEOC issued a Notice of Right to Sue on the grounds that it would do no further investigation. Attached as Exhibit G and incorporated by reference as though fully restated herein is the Determination and Notice of Rights.

51.    Plaintiff's EEOC Charge was timely filed, and Plaintiff exhausted all of her administrative remedies on her charge. Plaintiff has timely filed this complaint within 90 days of receiving the Notice of Right to Sue.

52.    Plaintiff's termination was based on her religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

53.    Accordingly, Plaintiff is entitled to a damages award against Defendant for all back pay, front pay, lost benefits, prejudgment interest, tax gross-up, attorney's fees, and expenses. In addition, Plaintiff is entitled to reinstatement to her former position if it is determined to be the proper remedy with all back pay and benefits. Finally, because of Defendant's willful and intentional conduct and reckless disregard for Plaintiff's federally protected rights, Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT III

54.    The allegations contained in paragraphs 1 through 43 are incorporated by reference into this Count III.

55.    Plaintiff engaged in protected activity by requesting an accommodation from the COVID-19 vaccine based on religious beliefs.

56.    In response, Defendant took adverse employment actions against Plaintiff in violation of the anti-retaliation provisions of Title VII by mandating she travel twice a week to a

separate Methodist facility during non-work hours to get tested for COVID. In addition, Plaintiff's

retaliation was retaliation for her requested religious exemption.

57.     Accordingly, Plaintiff is entitled to a damages award against Defendant for all back

pay, front pay, lost benefits, prejudgment interest, tax gross-up, attorney's fees, and expenses.

Moreover, Plaintiff is entitled to a compensatory damages award for the emotional damages she

has suffered.

**COUNT IV**

58.     The allegations contained in paragraphs 1 through 43 are incorporated by reference

into this Count IV.

59.     Plaintiff engaged in protected activity by requesting an accommodation from the

COVID-19 vaccine based on religious beliefs.

60.     In response, Defendant took adverse employment actions against Plaintiff in

violation of the anti-retaliation provisions of Title VII by mandating she travel twice a week to a

separate Methodist facility during non-work hours to get tested for COVID. In addition, Plaintiff's

retaliation was retaliation for her requested religious exemption.

61.     Accordingly, Plaintiff is entitled to a damages award against Defendant for all back

pay, front pay, lost benefits, prejudgment interest, tax gross-up, attorney's fees, and expenses. In

addition, Plaintiff is entitled to reinstatement to her former position if it is determined to be the

proper remedy with all back pay and benefits. Finally, because of Defendant's willful and

intentional conduct and reckless disregard for Plaintiff's federally protected rights, Plaintiff is

entitled to an award of punitive damages against Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that:

10

1.      The Court order Defendant to rescind all adverse employment actions taken against Plaintiff.

2.      The Court order Defendant to make Plaintiff whole for all lost wages and fringe benefits, back pay, loss of earning capacity, front pay, and emotional distress relating to Defendants' wrongful acts of discrimination.

3.      The Court order Defendant to pay prejudgment interest, tax gross-up, costs, and attorneys' fees.

4.      The Court award Plaintiff all equitable relief and injunctive relief as may be appropriate including back pay and benefits and front pay if it is not feasible to rehire Plaintiff and reinstate her seniority, lost pay, and lost benefits.

5.      The Court order Defendant to reinstate Plaintiff with all back pay if that is determined to be the proper remedy.

6.      The Court award Plaintiff punitive damages.

7.      The Court grant Plaintiff all other relief to which she is entitled.

8.      Plaintiff demands a jury trial.

Respectfully submitted,

/s/ Alexandria R. Scott
Ralph T. Gibson (BPR #14861)
Alexandria Holloway (BPR #39464)
GIBSON PERRYMAN LAW FIRM
*Attorneys for Plaintiff*
5100 Poplar Avenue, Suite 2117
Memphis, Tennessee 38137
(901) 526-0412
Ralph@GibsonPerryman.com
Alex@GibsonPerryman.com

11