**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**AUDREY RAGSDALE**,

*Plaintiff*,

v. Case No. 2:24 -cv-02237-BCL-atc

**METHODIST LE BONHEUR HEALTHCARE**,

*Defendant*.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant Methodist Le Bonheur Healthcare's Motion for Summary Judgment. Doc. 32.[1] For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion. The Court **GRANTS** summary judgment to Defendant on Plaintiff's retaliation claims (Counts III and IV). The Court **DENIES** summary judgment on the remaining claims (Count I and II).

## BACKGROUND

Plaintiff Audrey Ragsdale began working at Defendant Methodist Le Bonheur Healthcare in 2015, ultimately being promoted to the position of Medical Technologist I. Doc. 35-2 at 1. In response to the COVID-19 pandemic, Le Bonheur implemented a mandatory COVID-19 Vaccination Policy requiring that all employed associates to be fully vaccinated by October 31, 2021, although the policy allowed for exemptions for medical or religious purposes. Doc. 35-2 at

[1] This matter was originally assigned to Judge Thomas L. Parker. Doc. 2. Judge Parker recused in July 2024 (Doc. 11) and the case was transferred to Judge Mark S. Norris the same day. Doc. 12. Judge Norris transferred the case to the undersigned on March 25, 2026. Doc. 42.

2-3. To seek an exemption for a religious reason, employees had to submit a completed exemption request form explaining the religious belief or practice in conflict with the vaccination requirement. *Id.* at 3. The policy outlined that an approved exemption or full vaccination was a condition of employment, and failure to comply by the deadline would result in disciplinary action, including termination. *Id.* at 3-4.

On August 9, 2021, Plaintiff emailed her supervisor, Jane Nichols, concerning a possible religious exemption:

> I am seeking a religious exemption from the vaccine, tests, and masks and I want to know who is going to make the accommodations—as required by law—for my request. Is there a special form to fill out? Is there any reason you would refuse to accommodate the exemption, which is required by law, to be accommodated?

Doc. 37 at 2; Doc. 35-5 at 1. Ms. Nichols put Plaintiff in touch with Human Resources, which provided Plaintiff with the exemption request form. *Id.*

On August 18, 2021, Plaintiff submitted the form requesting exemption from all listed vaccines, including COVID-19. Doc. 32-5 at 14. Plaintiff attached a "Statement of Declination of Offer of Vaccine Products" in which she provided a one page statement that (1) declined "the offer of vaccine products based on my sincerely-held religious beliefs, practices, and/or observances"; (2) stated that her religious views required "that any and all products offered to me by my employer or workplace be both entirely retrievable from and also removable in its entirety from my body, person, and womanhood"; and (3) set out a concluding paragraph articulating Plaintiff's request. *Id.* at 15. That paragraph states:

> Because receiving the vaccine products would violate my sincerely-held religious beliefs, I hereby request accommodation of those beliefs with respect to the recently-imposed vaccination requirements. *My accommodations are wearing one non-fitted surgical style mask and continue social distancing without being tested for influenza or COVID.* Having formally notified Methodist LeBonheur Healthcare of the conflict between the vaccine products and my religious beliefs, I look forward to receiving in a prompt and timely manner your decision on what accommodation you will provide. Failing that, I reserve my right to pursue legal

> remedies available to me with the Equal Employment Opportunity Commission or otherwise in accordance with established law.

Doc. 32-5 at 15 (emphasis added).

On September 24, 2021, Defendant sent Plaintiff a letter notifying her that she had been allowed an exemption. Doc. 32-5 at 18. Under the allowed exemption, Plaintiff was required to:

- Wear a designated respirator mask provided by MLH at all times other than when actively eating or drinking.
- Be tested weekly for COVID-19.
- Maintain social distancing including in breakrooms, and other measures as deemed necessary.

Doc. 32-5 at 18. Plaintiff thanked Defendant's HR representative for the approval, but she also testified that she reached out to her "leader and the HR director" to discuss the arrangement—which, viewed in the light most favorable to Plaintiff as nonmovant, allows the conclusion that she sought to challenge the limited scope of the exemption on some basis. Doc. 32-4 at 38; Doc. 35-2 at 11; Doc. 35-9 at 1.

On October 18, 2021, Plaintiff emailed Defendant's HR Department to state: "I am concerned my accommodations of wearing one, non-fitted surgical style mask and no Influenza or COVID testing were included with my Religious Exemption that was approved. My Influenza Religious Exemption has not been updated on the website." Doc. 32-5 at 23.

On November 6, 2021, Plaintiff reported to work without having submitted to COVID-19 testing as mandated by Defendant in its claimed accommodation. Doc. 32-2 at 8; Doc. 35-2 at 13. Plaintiff's supervisor, Ms. Nichols, clocked her out, took her badge, sent her home, and told her that she was terminated. Doc. 32-4 at 42. Two days later, an HR employee, Ms. Moore, called Plaintiff to "clarify" that Plaintiff "had not been fired" and that she "was on two-week suspension." Doc. 35-2 at 13. On November 10, in response to an email from Plaintiff, the same HR employee

wrote to Plaintiff that "she had not been terminated, but rather suspended for failure to comply with the heightened safety measures put in place for unvaccinated associates … who were granted an exemption from the vaccine mandate." Doc. 35-2 at 14. While Plaintiff has taken the view that she was effectively terminated when her badge was taken on November 6, both Parties agree that Defendant was terminated on December 1, 2021 (at the latest) and that the stated basis for the termination was noncompliance with "safety measures which include the mask requirement and the twice weekly testing." Doc. 35-2 at 14-15.

On December 2, 2021, Plaintiff submitted a post-termination appeal letter. Doc. 35-3. Plaintiff stated: "The issue is NOT whether or not I have a sincerely held religious belief that FORBIDS me to be vaccinated"; "[t]he issue is that you are REFUSING to accommodate my position." Doc. 35-3 at 2. Plaintiff also argued that vaccination, "invasive covid test[s,]" and "mask[ing]" (at least beyond a relatively loose "surgical style mask") all violate her religious beliefs. *Id.* at 2-5. Plaintiff's appeal was unsuccessful.

Plaintiff filed this lawsuit on April 16, 2024, asserting four claims. Count I claims violation of the Tennessee Human Rights Act, TENN. CODE ANN. § 4-21-401, et seq., on the ground that "Plaintiff's termination was based on her religious beliefs in violation of THRA." Doc. 1 at 8. Count II alleged that "Plaintiff's termination was based on her religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e." *Id.* at 8-9. Count III claims retaliation in violation of Title VII—specifically, that Defendant retaliated against Plaintiff because she requested an accommodation based on her religious beliefs, and that Defendant retaliated by "mandating she travel twice a week to a separate Methodist facility during non-work hours to get tested for COVID." Doc. 1 at 9-10. Count IV appears to present the same substantive claim as Count III, albeit seeking different remedies. Doc. 1 at 10.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quotation marks and citation omitted). In resolving a motion for summary judgment, "the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party." *Id.* Thus, on summary judgment, a court "should not make credibility determinations or weigh the evidence"; rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Rockwood Auto Parts, Inc. v. Monroe Cnty., Mich.*, 155 F.4th 557, 566 (6th Cir. 2025).

## ANALYSIS

### I. The "religious discrimination" claims.

Defendant argues, and Plaintiff does not dispute, that the Tennessee Human Rights Act applies identically to Title VII with respect to Plaintiff's non-retaliation claims. Doc. 32-1 at 4. The Court therefore takes as a given that the two statutes are coextensive for purposes of this case.

Defendant also argues in its Reply that Plaintiff has failed to assert a claim of failure to accommodate her religious beliefs, instead claiming only "religious discrimination." Doc. 36 at 3-4. This argument misreads Plaintiff's complaint: While Plaintiff does allege that she was discriminatorily terminated for her religious beliefs, a full and fair reading of the complaint makes clear her focus on a refusal of her requested accommodations from the requirements—vaccine, or masking and testing—with which she refused to comply, leading to her firing. Doc. 1 at 3-4, 6-7. Put more simply: Plaintiff claims she was fired for refusing to comply with the requirements from

which she sought a religious accommodation. In that respect, Plaintiff alleges her "termination was based on her religious beliefs." Doc. 1 at 8. Plaintiff therefore has pleaded a claim of failure to accommodate, as Defendant seemingly recognized in its opening summary judgment brief. Doc. 32-1 at 4, 13-14 (noting accommodation requirement and presenting arguments concerning whether Defendant's requested accommodations were reasonable). At minimum, the lack of accommodation is relevant to an unlawful termination claim, insofar as Defendant allegedly terminated Plaintiff for failure to comply with requirements from which Plaintiff sought a religious accommodation. *See Sturgill v. American Red Cross,* 114 F.4th 803, 807 (6th Cir. 2024) (describing such a claim as a failure to accommodate claim). Plaintiff has properly challenged the accommodations she was offered, and her termination for failing to comply with them following refusal of her requested religious accommodation.

The Court now proceeds to examine the arguments actually presented in Defendant's opening summary judgment brief.

**A. The summary judgment record contains evidence from which a reasonable jury could find that Plaintiff had a sincerely held religious belief.**

At times, Defendant appears to argue that Plaintiff's beliefs—avoiding invasion of her body and keeping her face uncovered—are not religious at all, "but rather isolated moral teachings." Doc. 32-1 at 7. This argument is wholly unpersuasive: that only aspects of an employee's religion would come into play in a Title VII case is unsurprising, as the case would necessarily concern only those aspects of the employee's religion that come into conflict with a requirement imposed by the employer. In other words, an employee need not recite an entire sacred corpus or articulate a treatise on metaphysics to take advantage of Title VII.

More generally, Defendant fails in its attempt to question the nature of Plaintiff's beliefs—i.e., as something less than religious. Title VII broadly defines "religion" to include "all aspects of

religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C.A. § 2000e(j). Plaintiff easily survives summary judgment on this argument: While not strictly necessary, in describing her beliefs Plaintiff has invoked an established religion,[2] Christianity, including through invocation of her "Creator," the Holy Spirit and specific Bible verses. Doc. 32-5. The Court may not go further and "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989).

**2.** Defendant also argues that Plaintiff's belief is not sincere. Defendant bases this argument primarily on what it sees as Plaintiff's inconsistency or hypocrisy—i.e., that she takes a contraceptive despite claiming that her religious beliefs preclude her from using substances or procedures that invade her body or change it, and that she at one point complied with Defendant's demand that she wear a mask.[3] Doc. 32-1 at 6, 8. This argument can be viewed in two ways, and on either view it is flawed.

First, to the extent Defendant contends that the claimed religious views make so little sense as to be sincere as a matter of law, Defendant is effectively arguing that the views are too incredible to be true or even believed. That argument runs headlong into the settled rule that courts have no business assessing the credibility of religious beliefs. *See, e.g.*, *United States v. Ballard*, 322 U.S. 78, 87 (1944) ("The religious views espoused by respondents might seem incredible, if not

---

[2] Title VII does not demand that a religion be established. But invocation of an established religion in this instance removes some question about whether the beliefs were "religious."

[3] To be clear, Plaintiff has testified that she has prayed about this issue and feels that God allows her use of the contraceptive.

preposterous, to most people. But if those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect. When the triers of fact undertake that task, they enter a forbidden domain.").

Second, to the extent Defendant means only to argue that Plaintiff's violation of her own religious beliefs shows them to be insincere as a matter of law, the argument is doubly flawed. To begin, it is flawed because it would defeat most, if not all, assertions of religious belief because perfect adherence to principle, including religious principle, is a standard attained by no one, or at most very few. And then, in addition, Defendant's argument leaves no room for change in one's belief, or in one's courage and strength in adhering to them: On Defendant's view, the Catholic who formerly missed Mass, the Muslim who did not pray, and the Hindu who used to eat meat or beef might forever be barred from seeking to adhere to those religious beliefs due to their past lapses. That, surely, is not the law.

At bottom, the sincerity of Plaintiff's beliefs is a factual issue which, in this case, belongs to the jury. *See Ackerman v. Washington*, 16 F.4th 170, 180 (6th Cir. 2021) ("[S]incerity is a "'factual finding.'"). Defendant has identified facts that might be viewed as suggestive of insincerity. Plaintiff, on the other hand, claims to sincerely hold the relevant religious beliefs and, as noted, has described them in religious terms, including through citation to scripture and through invocation of the Holy Spirit. The Court cannot permissibly resolve this credibility question at summary judgment. *See Rockwood*, 155 F.4th at 566.

**B. The summary judgment record contains evidence from which a reasonable jury could conclude that Plaintiff's sincerely held religious beliefs conflicted with an employment requirement.**

Defendant argues that Plaintiff's sincerely held religious beliefs did not conflict with the components of its accommodation—social distancing, masking, and COVID testing. Doc. 32-1 at 10-12. The Parties' arguments concern masking and COVID testing.

*First*, Defendant argues that, prior to her termination, Plaintiff never claimed that masking and testing violated her religious beliefs. But that is not true. In her initial email on the subject, Plaintiff sought a "religious exemption from … tests and masks." Doc. 37 at 2. And a jury could reasonably find further support in the Statement of Declination, in which Plaintiff set out her religious objections to the vaccine but then set out her requested accommodations, which included "non-fitted" masking without testing—allowing the reasonable conclusion that she objected on religious grounds to fitted masks and testing. Doc. 32-5 at 15. And then again, not long thereafter, Plaintiff again linked the issue of masking and testing to her request for a religious accommodation: "I am concerned my accommodations of wearing one, non-fitted surgical style mask and no Influenza or Covid testing were included with my Religious Exemption that was approved." Doc. 32-5 at 23. From all of this, a reasonable jury could conclude that Plaintiff's sincere religious beliefs extended to masking and testing, and that Plaintiff's sincere religious beliefs thus conflicted with Defendant's masking and testing requirements.

*Second*, Defendant notes that Plaintiff did in fact comply with Defendant's masking requirement for some period of time. This is simply a rehash of Defendant's argument based on its perception of Plaintiff's failure to adhere to her own claimed beliefs which, as noted above, is insufficient to support its Motion for summary judgment.

**C. The summary judgment record contains evidence from which a reasonable jury could conclude that Defendant terminated Plaintiff for failing to comply with employment requirements that it knew conflicted with her religious beliefs.**

One of Defendant's representatives told Plaintiff directly that she was being terminated for noncompliance with "safety measures which include the mask requirement and the twice weekly testing." Doc. 35-2 at 14-15. As just discussed, the evidence allows the reasonable conclusion that Plaintiff's sincerely held religious beliefs prohibited compliance with those requirements—

meaning that a jury could conclude Plaintiff was fired for failing to comply with employment requirements that conflicted with her religious beliefs. In arguing to the contrary and that Defendant has a nondiscriminatory reason for terminating Plaintiff, Defendant appears to again assert its contention that masking and testing were not contrary to Plaintiff's sincerely held religious beliefs. Doc. 32-1 at 13-15. As already explained, that argument does not suffice to support summary judgment.

* * *

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment on the "religious discrimination" claims.

**II. The Retaliation claims.**

In Counts III and IV of her complaint, Plaintiff claims that Defendant unlawfully retaliated against her, in violation of Title VII and the THRA, for "requesting an accommodation from the COVID-19 vaccine based on religious beliefs." Doc. 1 at 9. To prevail on a retaliation claim based on circumstantial evidence,

> "a plaintiff must first establish a prima facie case by demonstrating that 1) the plaintiff engaged in an activity protected by Title VII; 2) the exercise of the plaintiff's civil rights was known to the defendant; 3) the defendant thereafter undertook an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action."

*Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 521 (6th Cir. 2002).

Plaintiff's retaliation claims fail as a matter of law because her request for an accommodation was not "protected activity."[4] Title VII prohibits retaliation against an employer "because he has opposed any practice made an unlawful employment practice by this subchapter,

[4] The Parties again treat Title VII and the THRA as interchangeable (for present purposes) and coextensive. The Court therefore does likewise.

or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a). Here, there was no investigation, charge, or hearing.

That leaves the "opposition" clause, which bars retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." On its own, requesting an accommodation is not an act of opposition to an unlawful employment practice; rather, it is merely a request to have employment requirements adjusted in light of one's religion. Thus, odd as it may seem, an accommodation request is not on its own the sort of protected activity capable of supporting a retaliation claim. *See Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1103 (8th Cir. 2018); *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 358 (6th Cir. 2020) ("A request for an accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation."). *But see Smith v. City of Atl. City*, 138 F.4th 759, 775 (3d Cir. 2025) (Dicta: "There is no genuine dispute that Smith has satisfied the first element of a prima facie retaliation case because he requested an accommodation, lodged a complaint with HR in furtherance of that request, and filed this lawsuit. All are activities protected by Title VII."). Plaintiff offers no argument to the contrary and, even if she had, she has identified no evidence that Defendant took the sole adverse action identified in her complaint—"mandating she travel twice a week to a separate … facility during non-work hours to get tested for COVID"—in retaliation for her request for an exemption.

Plaintiff's retaliation claim thus fails as a matter of law. Nor can Plaintiff save the retaliation claim by pointing to her post-termination appeal letter as an example of "opposing" Defendant's purportedly unlawful conduct. Doc. 35-3. Plaintiff sent that letter *after* the purported

adverse employment action about which she complains—so it could not have caused that purported adverse employment action. And, in any event, this claim appears nowhere in Plaintiff's complaint, and Plaintiff may not permissibly seek to redefine her claims in response to summary judgment. *See, e.g., Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent Bridgeport seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal.").

* * *

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to the retaliation claims.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment. Doc. 32. The Court **GRANTS** summary judgment to Defendant on Plaintiff's retaliation claims (Counts III and IV). The Court **DENIES** summary judgment on the remaining claims (Count I and II)

**IT IS SO ORDERED**, this 26th day of September, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE